IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Hudson Shipping Lines, Inc., | : |
|     Plaintiff, | : Case No. |
| vs. | : District Judge |
| Phoenix Global DMCC, | : Magistrate Judge |
|     Defendant, | : **IN ADMIRALTY** |
| and | : **VERIFIED COMPLAINT AND REQUEST FOR ISSUE OF WRITS OF MARITIME ATTACHMENT AND GARNISHMENT** |
| Phoenix Commodities USA LLC, | : |
|     Garnishee. | : |

Plaintiff, Hudson Shipping Lines, Inc. ("HSL" or "Plaintiff"), by its below-signed counsel, for its Verified Complaint in Admiralty against defendant, Phoenix Global DMCC ("Phoenix Global" or "Defendant"), alleges, upon information and belief as to allegations not personally known to HSL, as follows:

## JURISDICTION

1. This is a case of admiralty or maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Rule B").

2. Venue is proper in this District because the Garnishee named herein is located and can be found in this District.

## PARTIES

3. HSL is a business entity organized and existing under the laws of Liberia.

4. HSL has a registered office located in Nassau, Bahamas.

5. Phoenix Global is a business entity organized and existing under the laws of a foreign country.

6. Phoenix Global has its principal place of business located in Dubai, United Arab Emirates.

## UNDERLYING EVENTS

7. On or about September 11, 2017, HSL (as owners) and Phoenix Global (as charterers) entered into a maritime contract for the carriage of 55,000 metric tons of bulk wheat (10% more or less in owners' option) from Kavkaz, Russia to Chittagong, Bangladesh aboard the MV KN FOREST (the "Vessel").

8. The concerned charter party's terms were confirmed by way of a fixture recap of the same date (the "Charter Party").

9. A copy of the Charter Party is attached as Exhibit A.

10. Pursuant to the Charter Party, Phoenix Global was obligated to make payments for freight, demurrage and other charges to HSL.

11. The Charter Party provided for a daily demurrage rate of $16,000.

12. The Vessel performed the voyage and transported the cargo from Russia to Bangladesh without incident.

13. However, demurrage was incurred during the voyage in the following amounts: (a) 15.31380 days at the load port (yielding $245,020.80 in demurrage); and (b) 55.10485 days at the discharge port (yielding $881,677.60 in demurrage); for a total of (c) 70.41865 days (yielding $1,126,698.40 in demurrage).

14. Demurrage calculations are set forth in attached Exhibit B.

15. The Charter Party obligates Phoenix Global to pay HSL all outstanding demurrage within 30 days from the date of the discharge of the cargo at Chittagong and after receipt of all supporting documents from HSL regarding demurrage incurred during the performance of the voyage.

16. More than thirty days have passed since the Vessel completed discharging the cargo and since Phoenix Global received the requisite supporting documents regarding demurrage.

17. Phoenix Global has admitted to HSL through brokering channels that the demurrage is in fact due and owing to HSL, yet has failed to pay same, despite being provided ample time to do so.

18. Said failure to pay the full amount of outstanding demurrage constitutes a breach of the plain language of the Charter Party.

19. Despite repeated demands, and accounting for prior payments thus far received, the principal amount of **$862,614.67** remains due and owing to HSL, with recoverable interest continuing to accrue thereon.

20. Phoenix Global has requested multiple extensions of time to make payment and has effectively conceded that the vast majority, if not the entirety, of the principal demurrage amount is past due and owing to HSL.

21. Pursuant to the Charter Party, the merits of disputes arising thereunder are to be resolved by arbitration in London, conducted in accordance with the rules of the London Maritime Arbitrators Association ("LMAA") and with English law to apply.

22. HSL is thus entitled to recover attorney's fees and arbitration costs incurred in connection with the anticipated arbitration proceedings, pursuant to the rules governing LMAA arbitration.

23. HSL expressly reserves all rights to arbitrate the merits of the underlying dispute in London and brings the instant action solely to obtain *quasi in rem* jurisdiction over Phoenix Global together with security for its underlying claims (inclusive of interest and estimated attorneys' fees).

### FIRST CAUSE OF ACTION
### (Breach of Maritime Contract by Phoenix Global)

24. Paragraphs 1 through 22 of this Complaint are repeated and realleged as if the same were set forth here at length.

25. Phoenix Global breached its obligations under the Charter Party by failing to make timely payment of demurrage.

26. HSL thereby sustained damages: (a) in the principal amount of, at least, **$862,614.67**; (b) plus estimated interest (compounded quarterly for the length of time likely to encompass completion of LMAA arbitration proceedings) of **$145,000;** plus (c) estimated attorney's fees and arbitral costs of **$250,000**.

27. Phoenix Global's breach of the its obligations under the Charter Party has thereby caused HSL to suffer damages, as best as can now be estimated, in an amount equal to no less than **$1,257,614.67**.

### SUPPLEMENTAL RULE B ATTACHMENT

28. Paragraphs 1 through 26 of this Complaint are repeated and realleged as if the same were set forth here at length.

29. As set forth above, pursuant to the Charter Party the underlying merits of disputes are to be resolved by arbitration.

30. HSL expressly reserves all its rights to arbitrate the merits of the underlying dispute and brings this action solely to obtain *quasi in rem* jurisdiction over Phoenix Global, together with security for damages (inclusive of interests, costs and attorney's fees as aforesaid), pursuant to the provisions of Supplemental Rule B.

31. Upon information and belief, and after investigation (as is more fully described in the Declaration of John B. Kopf attached as Exhibit C), Phoenix Global cannot be "found" within this District within the meaning of Supplemental Rule B, but HSL is informed that Phoenix Global has, or will shortly have, property subject to attachment within this District.

32. Specifically, an Ohio business entity called Phoenix Commodities USA LLC ("Phoenix Commodities") maintains its principal place of business within this District at 661 Hopewell Drive, Heath, Ohio.

33. Upon information and belief, Phoenix Commodities: (a) serves as the U.S. transactional arm of Phoenix Global; (b) is directly or indirectly owned by Phoenix Global; and (c) engages in intra-group transactions with Phoenix Global that give rise to debts owed to Phoenix Global or other tangible or intangible property being held by Phoenix Commodities for the benefit of Phoenix Global.

34. The grounds for such information and belief include Phoenix Global's website (www.phoenixcommodities.com), which identifies Phoenix Global's place of business in Dubai as being the group's "Head Office" and Phoenix Commodities' place of business in Ohio as being the group's U.S. office (elsewhere indicated by the concerned website as being focused on

5

"procurement," which is understood to mean the purchasing of grain or other products in the U.S. for onward delivery to customers of, or arranged by, Phoenix Global).

35. Printouts from website are attached as Exhibit D.

36. Moreover, intra-group transactions are often encountered in the commodity trading industry, and Phoenix Global's executive Chairman (Gaurav Dhawan in Dubai) also stands as one of the three managers for Phoenix Commodities (the other two managers being located in Dubai and India respectively), as shown in the printouts from filings (concerning the Ohio entity, Phoenix Commodities) which had been made with the Illinois Secretary of State, which are attached as Exhibit E.

37. The total amount presently sought to be attached pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims by Plaintiff against Defendant, inclusive of the principal amount of **$862,614.67**, plus interest thereon and estimated costs and fees for arbitration, equals, at least, **$1,257,614.67**.

**WHEREFORE**, Hudson Shipping Lines, Inc. prays as follows:

1. That process in due form of law according to the practice of this Court may issue against Phoenix Global DMCC;

2. That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Phoenix Global DMCC, or in which said entity has a direct or beneficial interest, up to the amount of **$1,257,614.67** so as to establish *quasi in rem* jurisdiction over the Phoenix Global DMCC and to serve as security for subsequent enforcement of any arbitral awards and/or resulting judgments; and

3. That the Court retain *quasi in rem* jurisdiction for the ultimate enforcement of any resulting arbitral awards and/or resulting judgments, and grant such other, further and different relief as may be just, proper and equitable.

Dated: May 15, 2018    /s/ John B. Kopf
John B. Kopf (0075060)
Robert W. Burger (0068539)
THOMPSON HINE LLP
41 South High Street, 17th Floor
Columbus, Ohio 43215
(614) 469-3200 / (614) 469-3361 (fax)
john.kopf@thompsonhine.com
rob.burger@thompsonhine.com

Edward W. Floyd
(pro hac vice application to be filed)
Floyd Zadkovich (US) LLP
215 Park Ave. South, 12th Floor
New York, New York 10003
(917) 999-6914
ed.floyd@floydzad.com

*Attorneys for Plaintiff*

## **VERIFICATION**

John B. Kopf, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am an attorney admitted to practice before this Court and I am a partner with the firm of Thompson Hine LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2. I have read the foregoing complaint and I know the contents thereof, and the same are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are communications and information received from the Plaintiff and its representatives, together with an examination of the papers relating to the matters in suit and records found on the Plaintiff's website and on government websites. True and accurate copies of the records found and printed from the websites are attached to the Complaint.

3. The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a non-Ohio business entity as to which I am informed that no officer or director is presently within this District.

4. Plaintiff has not made any prior attachment applications with respect to the matters described in the Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 15, 2018

                               /s/ John B. Kopf
                               John B. Kopf (0075060)
                               Robert W. Burger (0068539)
                               THOMPSON HINE LLP
                               41 South High Street, 17th Floor
                               Columbus, Ohio 43215
                               (614) 469-3200 / (614) 469-3361 (fax)
                               john.kopf@thompsonhine.com
                               rob.burger@thompsonhine.com

                               *Attorneys for Plaintiff*